UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                        PLAINTIFF

vs.                              CRIMINAL ACTION NO. 3:17-CR-154-CRS

JUNIS L. PEGUERO                                                DEFENDANT

**MEMORANDUM OPINION**

**I.    Introduction**

This case is before the court on the motion of Defendant, Junis Peguero, to suppress fruits of an allegedly unconstitutional search. DN 36. An evidentiary hearing was held on July 1, 2019 and both parties have submitted post-hearing briefing on the matter. Therefore, this matter is ripe for review. The Court will deny the motion in all respects.

**II.    Factual Background and Procedural History**

On January 30, 2015, detectives Chris Lott ("Lott") and Jason DeWitt ("DeWitt") radioed detectives Daryl Neese ("Neese") and Matthew Chaudoin ("Chaudoin") of the Louisville Metro Police Department ("LMPD"). DN 42 at 6; DN 42 at 31. Lott and DeWitt were conducting surveillance of the McDonald's restaurant located at 3340 Bardstown Road. *Id*. This McDonald's is located in an area "replete with drugs and some violent crime." *Id.* at 7. Lott and DeWitt observed two vehicles pull into the McDonald's parking lot and park next to each other; one of the vehicles was a black Nissan Murano. *Id.* Lott and DeWitt saw a man exit the other vehicle and enter the Murano. *Id.* The man stayed in the Murano for a short time then returned to the other vehicle. *Id.* Lott and DeWitt told Neese and Chaudoin they believed this was a drug transaction. *Id.* at 7, 31.

Neese and Chaudoin proceeded to follow the Murano from the McDonald's parking lot in their unmarked vehicle. *Id*. at 7–8. The Murano pulled onto the Watterson Expressway and then proceeded to Dixie Highway, exiting at Crums Lane. In total, the detectives followed the Murano between seven and eight miles. *Id.*

While Neese and Chaudoin followed the Murano, they observed the following: (1) the driver's behavior was "fast, erratic, and dangerous" (*Id.* at 8, 35) and (2) the Murano had "extremely dark" window tinting (*Id.* at 8). Chaudoin estimated the vehicle was going between 15–20 miles per hour over the speed limit, and he saw the driver weave in and out of traffic without using turn signals. *Id.* at 8, 30, 41. Further, Chaudoin testified that the vehicle's window tint was so dark he could not see any features of two individuals in the vehicle. *Id* at 8–9. Based on his experience and training, Chaudoin testified that the tint on the vehicle was "well in excess of what's allowed by law." *Id.* at 43.

After the Murano exited onto Crums Lane, the driver pulled into the parking lot of an apartment complex. *Id.* at 9. When the car approached the building, Neese and Chaudoin turned on their police lights and initiated a traffic stop. *Id*. Chaudoin testified that the detectives pulled the car over because "the transaction [they] had observed as well as the violation of the window tint and the excessive speed and reckless driving on the interstate." *Id*.

As soon as the detectives turned on the police lights, both the driver and passenger side front doors of the Murano opened; the driver stepped out of the car. *Id*. Chaudoin testified that this behavior was "very, very unusual." *Id.* at 55. The driver was the Defendant, Junis Peguero ("Peguero"), and the passenger was Enrique Echevarria ("Echevarria"). Around this time, Chaudoin activated his digital pocket audio recorder. *Id.* at 11.

2

Chaudoin approached Echevarria on the passenger side of the Murano and asked for his identification. *Id.* at 13. Chaudoin testified that Echevarria's movements were agitated; Echevarria continued to move around, tried repeatedly to reach back towards the car, and "tensed up". *Id.* at 14, 15, 47. Chaudoin testified that he felt this behavior was a "distraction technique." *Id.* at 16. Based on Echevarria's behavior, Chaudoin handcuffed Echevarria and moved him behind the Murano. *Id.* at 47. Once he was in handcuffs, Chaudoin asked Echevarria for permission to search his person and he consented. *Id.* at 19. Chaudoin found one gram of powder cocaine in Echevarria's pocket. *Id.*; *See* DN 45-1.

At approximately three minutes and fifty seconds after Chaudoin began recording, after Chaudoin placed Echevarria in handcuffs, Neese asked Peguero for consent to search his vehicle. *Id.* at 45, 51. Peguero responded "I don't consent to any searches." *Id.* at 54. At approximately the same time, Peguero and Echevarria began communicating with each other in Spanish; Chaudoin ordered them both to be quiet. *Id.* at 14. Chaudoin testified that he did not understand Spanish and did not know what Peguero and Echevarria were discussing. *Id.* at 14–15. Peguero, like Echevarria, continued to try and walk back towards the car and moved in an "agitated" fashion. *Id.* at 14.

At some point after Peguero denied consent to search the vehicle, Neese searched Peguero and found a straw with powder residue in his pocket. *Id.* at 16. At approximately four minutes and forty seconds after Chaudoin began recording, Chaudoin placed Peguero in handcuffs because of his erratic behavior. *Id.* at 14, 54. Chaudoin then moved Peguero behind the Murano with Echevarria. *Id.* at 58. At approximately five minutes after Chaudoin began recording, Chaudoin told Neese that he found cocaine on Echevarria. *Id.* at 54. At some point between Neese asking Peguero for consent and Chaudoin telling Neese he had found cocaine on Echevarria, Neese began searching Peguero's vehicle. *Id* at 54.

3

Chaudoin testified that Neese searched the vehicle without Peguero's consent for the following reasons: (1) the suspected drug transaction at the McDonald's in a high crime area (*Id.* at 55); (2) the cocaine found on Echevarria (*Id.* at 56); (3) the straw with powder residue found on Peguero (*Id.*); (4) both Peguero and Echevarria opening their doors when the detectives initiated the stop (*Id.* at 55); (5) Echevarria's agitated movements and his attempts to reach back towards the car (*Id.*); and (6) Peguero's agitated movements and his attempts to reach back towards the car. *Id*. Based on these observations, Chaudoin suspected that Echevarria could have a weapon, and this suspicion "furthered our cause to believe that there would be more drugs in the car." *Id*. Further, based on Chaudoin's and Neese's experience that "drugs and weapons typically go together," both detectives believed that there would be "more weapons in the car." *Id*. at 56.

Neese's search of the vehicle revealed two guns: a handgun and a rifle. Neese found a Taurus, Model PT 745 Pro, .45 semi-automatic pistol, in the glove box in the front passenger side. *Id*. at 16; DN 1 at 1. The other firearm, a ROMARM/CUGIR, Model Draco, 7.62 x 39-millimeter semi-automatic rifle, Neese found in a camouflage Gucci gym bag behind the driver's side front seat. DN 42 at 16; DN 1 at 1. According to detective Chaudoin, the semi-automatic rifle in the Gucci bag was immediately visible to Neese when he opened the back doors of the vehicle. DN 42 at 56. Neese also discovered approximately 4,000 dollars in cash in the bag. *Id.* at 17.

After the search, Neese prepared an arrest citation for Peguero and Chaudoin prepared an arrest citation for Echevarria. *Id*. at 18. Neese charged Peguero with excessive window tint, trafficking in a controlled substance in the first degree second offense, possession of a firearm by a convicted felon, and possession of a handgun by a convicted felon. *Id*. at 19.

On November 7, 2017, the Grand Jury charged Peguero with possession of a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1) and § 942(a)(2). DN 1 at 1. On

March 8, 2019, Defendant filed a motion to suppress fruits of an allegedly unconstitutional search. DN 36. The Court held an evidentiary hearing on the motion to suppress on July 1, 2019. *See* DN 42. Both parties submitted post-hearing briefing on the matter. *See* DN 45; DN 46; DN 47.

**III.     Discussion**

It is well settled under the Fourth Amendment that warrantless searches are *per se* unreasonable, subject to only a few specifically-established and well-delineated exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The issue in this case is whether the warrantless search of Peguero's vehicle falls into one of those exceptions.

Peguero argues that the traffic stop was not justified, and the search of his vehicle did not fall into one of the exceptions to the Fourth Amendment's warrant requirement. DN 36 at 4. The Government argues that (1) the stop was justified based on probable cause a civil traffic violation occurred or, alternatively, because the officers had reasonable suspicion Peguero had committed a crime (DN 45 at 4–6); (2) Echevarria's consent justified the search of the vehicle (*Id.* at 6–7); (3) the search-incident-to-a-lawful-arrest exception to the warrant requirement justified the search of the vehicle (*Id.* at 10–13); and (4) the automobile exception to the warrant requirement justified the search of the vehicle. (*Id.* at 8–10). The Court will address (1) whether the traffic stop was lawful and (2) whether the Government has established that the search falls into one of the three exceptions.

    **A.     The Traffic Stop**

Peguero argues that the window tint did not provide probable cause for the detectives to stop his vehicle. DN 36 at 4; DN 46 at 4. Further, he argues that the detectives "planned to search the vehicle for the entire eight miles they followed Mr. Peguero" and did not have a reasonable

suspicion of criminal activity to do so. DN 46 at 4. A police officer must have either (1) probable cause that a civil infraction has been committed or (2) a reasonable suspicion of criminal activity to effect a lawful traffic stop under the Fourth Amendment. *U.S. v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (quoting *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F. 3d 763, 771 (6th Cir. 2004)). For a civil infraction, the inquiry for the Court is whether the officer in fact had probable cause to believe a traffic offense had occurred. *U.S. v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). If the officer had probable cause, "it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Id*. Violations of traffic laws are sufficient to establish probable cause. *See U.S. v. Puckett*, 422 F.3d 340, 342–343 (6th Cir. 2005).

Here, based on their training and experience in enforcing window tint infractions, Neese and Chaudoin observed and reasonably believed that Peguero's vehicle had excessive window tint. DN 42 at 43. Chaudoin testified the tint was so dark that he could not discern the features of the driver or passenger. *Id.* at 9. Chaudoin also testified that Kentucky law requires, at least, 35% light transmission for window tint. Ky. Rev. Stat. Ann. § 189.110 (3); DN 42 at 43. He estimated that Peguero's vehicle allowed much less, around 5% light transmission. DN 42 at 43. Because the detectives observed Peguero's window tint and knew, based on their training and experience, that it was excessive, the window tint alone is sufficient to establish probable cause for a civil infraction.

Peguero is correct that Chaudoin testified the narcotics investigation was "part of the reason" he and Neese initiated the stop. DN 42 at 44. The detectives' belief that there may have been narcotics in Peguero's vehicle does not negate the probable cause for the window tint infraction. In fact, the Sixth Circuit has held specifically that this type of belief is irrelevant to the probable

6

cause analysis. Accordingly, the Court finds that the traffic stop was lawful under the Fourth Amendment.[1]

### B. The Vehicle Search

Peguero argues that Neese's vehicle search did not fall within any of the exceptions to the warrant requirement under the Fourth Amendment. The Government argues the search was justified under three possible exceptions: (1) consent (2) search-incident-to-a-lawful-arrest and (3) the automobile exception. The Court will address each.

#### a. Consent

The Government argues that Echevarria's consent to Chaudoin's search Echevarria's person was sufficient to justify the search of Peguero's vehicle. DN 45 at 6–7. This argument is easily disposed of. At three minutes and fifty seconds into Chaudoin's recording, Peguero unequivocally states "I do not consent to any searches." DN 42 at 54. The Court does not need to analyze whether Peguero consented because, clearly, he did not consent. The Court finds that Neese's search of Peguero's vehicle was not justified based on consent.

#### b. Search Incident to a Lawful Arrest

The Government argues that the search was justified by the search-incident-to-a-lawful-arrest exception because (1) the detectives found cocaine on Echevarria and a straw with powder residue on Peguero, and (2) both Peguero and Echevarria attempted to move back towards the vehicle. DN 45 at 10. This argument is also easily disposed of.

---

[1] Because the stop was supported by probable cause, the Court does not need to analyze whether the detectives had reasonable suspicion of criminal activity.

In *Gant*, the Supreme Court limited the search-incident-to-a-lawful-arrest exception to "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. Here, prior to Neese asking Peguero for consent to search the vehicle, Chaudoin had already placed Echevarria in handcuffs and moved him behind the Murano. At approximately four minutes and forty seconds, approximately a minute after Neese asked for Peguero's consent, Chaudoin placed Peguero in handcuffs and moved him behind the Murano. DN 42 at 47. While it is unclear exactly when Neese began the search of Peguero's vehicle, it is undisputed that, as Neese conducted the search, both Peguero and Echevarria had been detained, in handcuffs, and were standing behind the Murano. *Id.* at 47, 58. Neither Peguero or Echevarria was unsecured or within reaching distance of the passenger compartment as required by *Gant*. Accordingly, the Court finds that the search was not justified based on a search-incident-to-a-lawful-arrest.

### c. Automobile Exception

The Government argues that the automobile exception justified the search of Peguero's vehicle. DN 45 at 8. Police officers are authorized to conduct a search of any area of a vehicle without a warrant if there is probable cause to believe the vehicle contains evidence of criminal activity. *U.S. v. Ross,* 456 U.S. 798, 799–800 (1982). Probable cause is a "fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *U.S. v. Keeling*, No. 18-6004, 2019 WL 3731652, at *5 (6th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). To determine whether an officer had probable cause to search a vehicle under the automobile exception, the Court looks to the totality of the circumstances to determine "whether there is a fair probability that contraband or

evidence of a crime will be found in a particular place." *Keeling,* 2019 WL 3731652, at *5 (quoting *U.S. v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002)).

At the moment Neese decided to search Peguero's vehicle, Neese and Chaudoin were aware of the following: (1) detectives Lott and DeWitt told Neese and Chaudoin they observed Peguero and Echevarria engage in a suspected drug transaction in a high crime area (DN 42 at 6, 7, 31); (2) Chaudoin believed Peguero committed a civil infraction because of excessive window tint (*Id.* at 43); (3) Chaudoin and Neese observed Peguero drive recklessly and between 15 and 20 miles per hour over the speed limit (*Id.* at 8, 30, 41); (4) when Neese and Chaudoin imitated the stop, both Peguero and Echevarria immediately opened their doors (*Id.* at 9, 55); (5) both Peguero and Echevarria continued to move in an "agitated" fashion and attempted to reach back towards the car several times before being placed in handcuffs (*Id.* at 14, 15, 47, 54); (6) Chaudoin's pat down of Echevarria revealed one gram of powder cocaine (*Id.* at 19); (7) Neese's pat down of Peguero revealed a straw with a powder residue. *Id.* at 16. Taken together, these facts created a "fair probability" that Peguero's vehicle would contain evidence of a crime. *Keeling,* 2019 WL 3731652, at *5. The Court finds that Neese and Chaudoin had probable cause to believe Peguero's vehicle would contain evidence of a crime and was therefore justified under the automobile exception.

## IV. Conclusion

Taking all the factors surrounding the stop and search, the initial traffic stop was justified by probable cause because of the excessive window tint. The search of Peguero's vehicle was supported by probable cause and falls under the automobile exception to the Fourth Amendment's warrant requirement. As a result, the Court will deny the motion to suppress in its entirety.

9

A separate order will be entered in accordance with this opinion.

October 4, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**